IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | : Chapter 11 |
| AH LIQUIDATION, INC., | : Case No. 21-10883 (CTG) |
| Debtor. | : (Jointly Administered) |
| HE, INC.,<br>        Appellant,<br>    v.<br>AVADIM HOLDINGS INC., and<br>RELION HOLDINGS LLC,<br>        Appellees. | : Civ. No. 23-329-JLH |

**MEMORANDUM ORDER**

**I.    INTRODUCTION**

This dispute arises from the chapter 11 cases of the above-captioned debtors ("Debtors") in connection with the Bankruptcy Court's construction and enforcement of its order (A-077–A-115)[1] ("Sale Order") approving the sale of the Debtors' assets to appellees Avadim Holdings, Inc. and Relion Holdings LLC ("Buyer").  Prior to their bankruptcy, the Debtors bought from appellant HE. Inc. ("HE") U.S. Patent No. 6,358,516 (the "Patent"), as well as all of the intellectual property associated with the Patent that was not already included in the Patent (the "Proprietary Technical Information" or "PTI," and together with the Patent, the "Patent IP").  When the Debtors filed for bankruptcy, the Patent IP became property of the estate.  The Debtors then sold substantially all of their assets to the Buyer, including all of their intellectual property, unless specifically excluded.

---

[1] The docket of the chapter 11 cases, captioned *In re AH Liquidation*, *Inc.*, No. 21-10883 (CTG) (Bankr. D. Del.), is cited herein as "B.D.I. __."  The appendix (D.I. 8-1) to HE's opening brief is cited herein as "A-_," and the appendix (D.I. 10) to Buyer's answering brief is cited herein as "SA-_."

1

The Sale Order approved this sale free and clear of any claims or encumbrances.

One year later, HE sued the Buyer in the Southern District of Georgia for using the Patent IP. Buyer moved the Bankruptcy Court to enforce the Sale Order and determine that the Buyer owned the Patent IP free and clear of HE's lawsuit. On March 9, 2023, the Bankruptcy Court entered an order (B.D.I. 555) ("Enforcement Order") enforcing the Sale Order, and HE appealed. On February 12, 2025, the Court issued an Opinion (D.I. 13) and Order (D.I. 14) affirming the Enforcement Order. On February 26, 2025, HE filed the Motion for Rehearing (D.I. 15), which is pending before the Court.

## II.   BACKGROUND

In 2002, HE obtained the Patent.[2] In 2007, HE licensed the Patent to the Debtors' predecessor Avadim, LLC.[3] In 2013, HE sold the Patent to the Debtors.[4] Three years later, following a series of disputes, the Debtors and HE entered into three contracts: (1) a Settlement Agreement, dated July 15, 2016 (the "Settlement Agreement");[5] (2) a Confidentiality Non-Use and Non-Disclosure Agreement, dated July 15, 2016 (the "Confidentiality Agreement");[6] and (3) the Assignments and Confirmation of Previous Assignments, dated July 18, 2016 (the "Assignment").[7]

The Settlement Agreement superseded all prior agreements and became the operative

---

[2] A-336.

[3] *Id.*

[4] A-28 (Settlement Agreement at Fourth Whereas Clause).

[5] (A-28–A-50).

[6] (A-52–A-67).

[7] (A-69–A-75).

agreement governing the Debtors' and HE's relationship.[8]  The Settlement Agreement reaffirmed the sale and transfer to the Debtors of HE's "entire right, title, and interest in and to" the Patent, and further conveyed to the Debtors all of the Patent IP.[9]  HE thus broadly assigned to the Debtors everything it owned associated with topically applied formulations, "including, but not limited to, ***patents***, trademarks, copyrights, domain names, web addresses, websites, personal sales, equipment, ***and proprietary business and technical information*** … reasonably related to topically applied formulations that may be used on people, other mammals, surfaces, and the like."[10]  HE also relinquished all rights in the Patent IP:

> Neither HE, Inc. nor N.R. Harod shall retain any rights whatsoever in the assets of HE, Inc. that are assigned under this Section 1 … or any rights or ownership whatsoever in the subject matter of this Settlement Agreement.[11]

In exchange, the Debtors agreed to pay consideration to HE, including cash in monthly installments.[12]  The Settlement Agreement provided that if the Debtors breached this obligation, the breach would "not result in termination of this Settlement Agreement, and the sole remedy of HE, Inc. and N.R. Harod [would] be in monetary damages."[13]

---

[8] A-29 (Settlement Agreement at Ninth Whereas Clause).

[9] A-28 (Settlement Agreement at Fourth Whereas Clause).

[10] A-29 (Settlement Agreement § 1) (emphasis added).

[11] *See also* A-30 (Settlement Agreement § 1) (HE "retain[s] no ownership interest whatsoever in any subject matter reasonably related to topically applied formulations[.]"); A-33 (*id.* § 10) ("[T]he parties confirm that HE, Inc. has retained under this Settlement Agreement ownership of no rights or property whatsoever, other than with respect to any liabilities associated therewith, in any subject matter reasonably related to topically applied formulations[.]").

[12] A-32–A-33 (Settlement Agreement § 9(b)).

[13] A-38 (Settlement Agreement § 23).

The Debtors and HE also entered into the Confidentiality Agreement. Under that agreement, HE and its principals agreed not to disclose any confidential information, trade secrets, or other proprietary information relating to the Patent IP—that is, "relating to topically applied formulations that may be used on people, other mammals, surfaces, and the like, including but not limited to formulations coming within the scope of … U.S. Patent No. 6,358,516, and that may not be specifically enumerated in U.S. Patent No. 6,358,516."[14] The Confidentiality Agreement also transferred to the Debtors "all ownership interest that any of them may possess, individually or collectively with HE, Inc., in the HE, Inc. Proprietary Information [and] . . . acknowledge[d] that none of them . . . retain[] any interest whatsoever in the HE, Inc. Proprietary Information" going forward.[15]

Finally, HE formally transferred the Patent IP by executing the Assignment. The Assignment relates to the entirety of the Patent IP, including the PTI, defined as:

> proprietary technical information associated with the said Harod U.S. Patent No. 6,358,516, including inventions, trade secrets, and the like information reasonably related to topically applied formulations that may be used on people, mammals, surfaces, and the like ("**Proprietary Technical Information**")[.][16]

The Assignment confirmed the transfer of the Patent, and conveyed the PTI from HE to Debtors:

> HE, Inc. has sold to Avadim LLC and by these presents does hereby confirm the sale, assignment, transference, and conveyance unto Avadim LLC as of March 4, 2013; and Avadim LLC has sold to ATI … ***the entire right, title, and interest, including the right to sue for past infringement, in Harod U.S. Patent No. 6,358,516…***
>
> The Parties further wish it known that for good and valuable consideration, the receipt and sufficiency of which is hereby

---

[14] A-53 (Confidentiality Agreement § 1).

[15] A-54 (Confidentiality Agreement § 4).

[16] A-69 (Second Whereas Clauses) (emphasis added).

> acknowledged, Harod and HE, Inc., jointly and severally, have sold and by these presents do hereby confirm the sale, assignment, transference, and conveyance unto ATI, ***the entire right, title, and interest in the Proprietary Technical Information[.]***[17]

The Debtors filed for bankruptcy in May 2021. As HE explains:[18]

> The calendar year 2021 timeline was as follows: the Debtors filed their sale motion (D.I. 16) on June 1, the day after commencing their chapter 11 cases [A_001]; the Debtors filed the form of Sale Order containing Paragraph 44 on July 28 (D.I. 219) [A_002]; the Bankruptcy Court entered the Sale Order without a hearing on August 1 (D.I. 239) [A_003]; and the Debtors gave notice of the sale closing on August 17 (D.I. 263) [A_004].

(D.I. 15 at ¶ 14.) On August 1, 2021, the Bankruptcy Court entered the Sale Order approving the APA.[19] Under the APA, the Buyer bought the "Purchased Assets."[20] The term "Purchased Assets" was defined as all of the Debtors' assets not specifically listed as an Excluded Asset.[21] The Purchased Assets included all the Debtors' "Owned Intellectual Property," which was defined as

---

[17] A-70–A-71 (emphasis added).

[18] HE asserts that this Court's Opinion "appears to misapprehend the timing of Paragraph 44, the entry of the Sale Order and the closing of the sale." (D.I. 15 at ¶ 13.) Writing primarily for the parties, the Court summarized the events as follows: "[T]here appears no dispute that, as of the bankruptcy filing, the Debtors owned the Patent IP, the Debtors sold the Patent IP to the Buyer, and the sale was free and clear of any claims and encumbrances." (*See* Opinion at 11.) HE takes issue with this summary because "[t]he Bankruptcy Court entered the Sale Order containing Paragraph 44 [on August 1] before the Debtors conveyed any of their assets to the Buyer [on August 17]" which "prevented the transfer of the Debtors' rights and obligations under the [Settlement Agreement and Confidentiality Agreement] to the Buyer ***before*** the Debtors transferred their assets to the Buyer." (D.I. 15 at 5-6.) The Court does not misapprehend the timing of these events. The Sale Order was entered before the sale closed and the assets were transferred. The Court disagrees with HE's interpretation of Paragraph 44.

[19] A-77.

[20] A-139 (APA § 2.1).

[21] A-135 (APA § 1.1) (definition of "Purchased Assets").

"all Intellectual Property owned … by a Seller."[22] The "Owned Intellectual Property" included, but was not limited to, the intellectual property listed on Schedule 4.9(a) of the APA.[23] In turn, Schedule 4.9(a) contained a list of patents, including the Patent.[24]

In sum, the Debtors sold all of their assets, including all of their intellectual property, unless specifically excluded. The Patent IP, which includes the PTI, was not specifically excluded and, therefore, was a Purchased Asset.[25] The Sale Order approved the transfer of Purchased Assets to the Buyer free and clear of any claims and encumbrances.[26]

At the request of HE, the parties agreed to include language in the Sale Order confirming that the Debtors were not assuming the Settlement Agreement or Confidentiality Agreement, or assigning rights or obligations under those agreements to the Buyer:

> Neither the Settlement Agreement … nor the [Confidentiality Agreement] shall be an Assumed Contract. Further, notwithstanding anything to the contrary in this Order or the Stalking Horse APA, none of the Debtors' rights or obligations under the [Settlement Agreement] and the [Confidentiality Agreement] shall transfer to the

---

[22] A-141 (APA § 2.1(p)); A-138 (APA § 1.1).

[23] A-141 (APA § 2.1(p)); A-154 (APA § 4.9) ("Owned Intellectual Property" included "Scheduled Intellectual Property," which was defined as the intellectual property listed on Schedule 4.9(a)).

[24] A-294 (Schedule 4.9(a)).

[25] Section 2.2 of the APA lists the "Excluded Assets" and does not list the Patent IP. A-141–A-142.

[26] A-98 (Sale Order ¶ 16). Specifically, the Sale Order provided that "no holder of any Claims or Encumbrances in the Purchased Assets shall interfere with the Buyer's enjoyment of the Purchased Assets based on or related to such Claim[.]" *Id.* To enforce this provision, the Sale Order enjoined persons holding any claim against the Debtors or the Purchased Assets from asserting that claim against the Buyer. A-107 (Sale Order ¶ 35) (providing that all persons having any claims "against, in, or with respect to … the Purchased Assets" are "forever barred and estopped from asserting, prosecuting, or otherwise pursuing such Claim … against the Buyer or any affiliates, successors or assigns thereof … with respect to the Purchased Assets").

Buyer.[27]

Central to the dispute is HE's argument that the second sentence of Paragraph 44 "prevented the transfer of the PTI to the Buyer." (D.I. 8 at 9 n.10.)   On November 5, 2021, the Debtors confirmed their plan (the "Plan"), which went effective ten days later.  The Plan provides that all executory contracts not expressly assumed as of the effective date are rejected.[28]  The Debtors never assumed the Settlement Agreement or Confidentiality Agreement, and those contracts therefore were rejected on the Plan's effective date.[29]

In November 2022, HE sued the Buyer in the U.S. District Court for the Southern District of Georgia.[30]  HE alleged that, pursuant to paragraph 44 of the Sale Order, the Buyer "purposefully failed to purchase the intellectual property rights of HE, Inc. in the Bankruptcy Action," and therefore, "the proprietary information reverted back to HE, Inc."[31]  Based on this view that the PTI "reverted back to HE," HE sought damages and an injunction against the Buyer for its "unauthorized use" of the PTI.[32]

On December 23, 2022, the Buyer filed a motion in the Bankruptcy Court to enforce the Sale Order against HE (the "Motion to Enforce").[33]  The Motion to Enforce sought a ruling that HE's

---

[27] A-111 (Sale Order ¶ 44).

[28] SA-97 (Plan § XI.B).

[29] The Assignment was not executory as it was substantially completed upon the assignment of the Patent IP, and thus there were no material unperformed obligations remaining.

[30] A-326–A-375 (the "Complaint").

[31] Complaint ¶¶ 10, 23.

[32] *Id.* ¶ 1.

[33] A-8–A-26.

Complaint violated the Sale Order's free and clear provisions, and that the Buyer owned the Patent IP free and clear of all claims, including any claims of HE.[34] HE admitted that it had sold the Patent to the Debtors in 2013.[35] HE further acknowledged that its reading of paragraph 44 of the Sale Order did not apply to the Patent, and the only asset at issue was the PTI. HE further acknowledged that it had conveyed ownership of the PTI to the Debtors in 2016.[36] Finally, HE acknowledged that, but for its reading of paragraph 44 of the Sale Order, the PTI was a "Purchased Asset" under the APA.[37]

HE's sole basis for asserting that the Buyer did not buy the PTI from the Debtors was its reading of Sale Order paragraph 44. HE argued that "as a result of the Second Sentence, the Buyer has no rights to the PTI." The question before the Bankruptcy Court was whether paragraph 44 of the Sale Order somehow removed the PTI from the assets transferred to the Buyer, and, in HE's words, caused ownership rights to "revert back to HE."[38] On one hand, the Bankruptcy Court explained, HE's view was that "none of the rights that the debtor may have acquired under those agreements shall transfer to the buyer"; on the other hand, the Buyer's view was that "no forward-

---

[34] A-17.

[35] A-382 (HE Objection ¶ 31 n.6) ("HE had previously transferred the Patent to the Debtors pursuant to the 2013 Patent Agreement."); *id.* ("Paragraph 44 of the Sale Order should not apply to the Patent.").

[36] A-379 (HE Objection ¶ 13) (the Assignment "provides for the assignment of the PTI by HE to the Debtors[.]"); A-410-65 ("1/19/23 Hr'g Tr.") at 31:21-24 ("THE COURT: So[,] the PTI, everyone agrees that after the three 2016 agreements are entered into, the PTI is owned by the Debtor, right? That's common ground. MR. MACAULEY: Right.").

[37] 1/19/23 Hr'g Tr. at 31:25-32:6 ("THE COURT: And the sale agreement itself, is your position that the sale agreement excluded the PTI from the conveyed assets? … MR. MACAULEY: No.").

[38] Complaint ¶ 23.

looking rights or obligations under those agreements transferred to the buyer."[39]

Ruling from the bench, the Bankruptcy Court found that the Buyer's reading was "the more sensible reading in this context."[40] Accordingly, the Bankruptcy Court held that paragraph 44 of the Sale Order did not remove the PTI from the asset sale; rather, "***the PTI that was owned by the Debtor was transferred free and clear to the buyer in connection with the sales transaction that this Court previously approved***."[41] The Bankruptcy Court explained that HE's reading of paragraph 44 of the Sale Order as "giving back essentially to the seller assets that it had transferred to the buyer under those agreements … just isn't a sensible way to make sense of what that language was trying to do."[42] Paragraph 4 of the Enforcement Order memorializes the Bankruptcy Court's construction of paragraph 44 of the Sale Order:

> Pursuant to the Sale Order, the Buyer owns the Patent IP free and clear of all claims and encumbrances, including any claims of HE. HE retains no rights in any of the assets that Buyer purchased pursuant to the Sale Order, including the Patent IP. This Court construes the last sentence of ¶ 44 of the Sale Order to clarify (consistent with the prior sentence) that HE shall not owe future performance obligations to the Buyer under the [Settlement Agreement and Confidentiality Agreement]. ***That sentence does not operate to revoke any conveyance of an asset that had already occurred as of the entry of the Sale Order.***

(Enforcement Order ¶ 4.) This appeal followed. HE asserted that the "meaning of the second sentence of Paragraph 44 of the Sale Order … is the subject of this Appeal." (D.I. 8 at 6.) HE argued that the Bankruptcy Court erred in his legal conclusion to construe the second sentence of

---

[39] 1/19/23 Hr'g Tr. at 51:18-52:3.

[40] *Id*. at 52:4-5.

[41] *Id*. at 47:22-25 (emphasis added).

[42] *Id*. at 52:5-11.

9

Paragraph 44 as pertaining only to go-forward rights and obligations of the Debtors under their agreements with HE and not to all rights and obligations under those agreements, including the Debtors' rights to HE's proprietary information. At the same time, HE urged this Court not to address issues of "PTI ownership," as "the Bankruptcy Court did not rule on those other grounds, but rather based his ruling solely on Paragraph 44 of the Sale Order." (*Id.* at 7 n.9.)

The Court disagreed that the Bankruptcy Court's ruling did not address the issue of who owned the PTI. (*See* Enforcement Order at ¶ 4 ("That [second] sentence does not operate to revoke any conveyance of an asset that had already occurred as of the entry of the Sale Order"); 1/19/23 Hr'g Tr. at 47:21-25 ("I conclude that … the PTI that was owned by the Debtor was transferred free and clear to the buyer in connection with the sales transaction that this Court previously approved.").) HE's primary argument on appeal, that the second sentence of Paragraph 44 prevented the transfer of the PTI to the Buyer, is predicated on an argument that the PTI was not owned by the Debtors but rather was a "right." The Bankruptcy Court rejected that argument, and this Court agreed.

Central to this Court's Opinion is its holding that the PTI was an asset of the Debtors' estate, owned outright by the Debtor, and not a contractual right under the Settlement Agreement; the Settlement Agreement reaffirmed the sale and transfer to the Debtors of HE's "entire right, title, and interest in and to" the Patent, together with all of the Patent IP.[43] As to Paragraph 44, on which HE's entire argument rested, this Court agreed with the Bankruptcy Court:

> The first sentence of paragraph 44 states that the specified contracts will not be "Assumed Contracts," that is, "executory contracts and unexpired leases of the Debtors that will be assumed and assigned to the Buyer." A-078; A-135 (APA § 1.1) (definition of "Purchased Assets"). The second sentence of paragraph 44 states that, notwithstanding anything to the contrary elsewhere, none of the Debtors' rights or obligations under those contracts will transfer to

---

[43] A-28-29.

10

> the Buyer. This sentence builds on the first by specifying the consequence of not assuming and assigning: the Buyer does not receive assignment of the unperformed rights, nor assumes the burden of satisfying unperformed obligations. This is because assumption or rejection of a contract relate only to those parts of the contract that are executory—that is, materially unperformed. *See Delightful Music Ltd. v. Taylor (In re Taylor),* 913 F.2d 102, 106 (3d Cir. 1990) ("[T]he issue of affirmance or rejection relates only to those aspects of the contract which remained unfulfilled as of the date the petition was filed."). In other words, "[t]he decision [to assume] is forward looking, and does not affect the rights and obligations that have already accrued." *Empire State Bldg. Co. v. N.Y. Skyline, Inc. (In re N.Y. Skyline, Inc.),* 432 B.R. 66, 80 (Bankr. S.D.N.Y. 2010).
>
> Accordingly, the Bankruptcy Court did not err when it construed paragraph 44's second sentence to "clarify (consistent with the prior sentence) that HE shall not owe future performance obligations to the Buyer" under the specified agreements. Enforcement Order ¶ 4. For the same reason, the language "does not operate to revoke any conveyance of an asset that had already occurred as of the entry of the Sale Order." *Id*.

(D.I. 13 at 13.) On February 26, 2025, HE filed the Motion for Rehearing.

## III. APPLICABLE STANDARD

Rehearing under Federal Rule of Bankruptcy Procedure 8022 is appropriate when: (1) the court has patently misunderstood a party, (2) the court has made a decision outside the adversarial issues presented ... by the parties; (3) the court has made an error not of reasoning but of apprehension; or (4) there has been a controlling or significant change in the law or facts since the submission of the issue to the Court." *In re Lau*, 684 F. App'x 235, 239 (3d Cir. 2017). Rehearing is also appropriate when there is a "need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). "A motion for rehearing does not permit parties to recycle cases and arguments which the District Court already rejected in rendering its original decision." *In re Lau,* 684 F. Appx at 239.

11

## IV.     ANALYSIS

HE's Motion for Rehearing raises two main arguments. First, according to HE, "[t]he Court's apprehension error was assuming that [the Settlement Agreement and Confidentiality Agreement] were executory when the Sale Order did not require that." (D.I. 15 at ¶ 8.) Because "nothing in Paragraph 44 or the rest of the Sale Order determined that those two agreements were executory," HE argues, this Court lacked "any basis to construe "the Debtors' rights and obligations" in the second sentence as meaning "unperformed rights" and "unperformed obligations." (*Id.* ¶ 7.) And while HE takes the position that the Settlement Agreement and Confidentiality Agreement were executory contracts, "HE's point … is that the Court cannot reach that conclusion merely by reference to the Sale Order, and therefore the Court used a mistaken premise to interpret the second sentence [of Paragraph 44.]." (*Id.* at 3 n.3.)

The Court made no such assumption, and its discussion of possible "rights and obligations" under the Agreements was not necessary to its ultimate holding: that the Debtors owned the Patent IP outright as of the Petition Date, and that such ownership was not a contract right or obligation affected by paragraph 44; it was a completed transfer that had occurred years before. (*See* D.I. 13 at 14.) None of the arguments raised in the Motion for Rehearing address this core holding.

The remainder of the Court's Opinion agrees with the Bankruptcy Court construction of paragraph 44: that it clarifies, for the avoidance of doubt, that neither the Settlement Agreement nor the Confidentiality Agreement are being assumed and assigned in the sale, and that no rights or obligations, to the extent they exist under those agreements, are being transferred. The first sentence of paragraph 44 states that "*[n]either the Settlement Agreement ... nor the [Confidentiality Agreement] shall be an Assumed Contract.*" The Opinion agreed with the Bankruptcy Court that the second sentence of Paragraph 44—"*Further, notwithstanding anything to the contrary in this Order or the Stalking Horse APA, none of the Debtors' rights or obligations under the [Settlement*

12

*Agreement] and the [Confidentiality Agreement] shall transfer to the Buyer*"—"builds on the first by specifying the consequence of not assuming and assigning those agreements: the Buyer does not receive assignment of the unperformed rights, nor assumes the burden of satisfying unperformed obligations." (Opinion at 12.) Thus, to the extent the Agreements are executory, such that assumption and assignment might have been possible, Paragraph 44 clarifies, for the avoidance of doubt, both (i) that those Agreements are not Assumed Contracts under the Sale Order, and (ii) that the Debtors are not assuming or transferring any unperformed rights or obligations they owe under the Agreements—*e.g.*, their right to enforce the Confidentiality Agreement's noncompete provisions against HE, or their obligation to make payments to HE under the Settlement Agreement (as HE instead held an unsecured claim against the estates.) This Court's holding does not assume that the Agreements are executory or that there are in fact any unperformed rights or obligations under Agreements for the very reason that HE points out: a court "has no reason to address whether contracts ***not assigned to the buyer*** are executory." (D.I. 15 at ¶ 4 (emphasis added).) The portions of the Opinion cited by HE in its Motion for Rehearing do not demonstrate otherwise.[44]

Second, HE argues that "the Opinion misapprehends the basis for carving out from the asset sale 'the Debtors' rights and obligations' under the Two Agreements." (*Id.* at ¶ 16.) HE says that "there is no question that the Debtors' rights to the PTI derived initially from the Settlement Agreement." (*Id.* at ¶ 18.) And HE says that, "[a]lthough Paragraph 44 does not reference the Assignment, its source of authority was the Settlement Agreement, and the Settlement Agreement

---

[44] The first sentence cited by HE is taken from the background section of the Opinion, and it simply states that "The Sale Order defines 'Assumed Contracts' as 'executory contracts and unexpired leases of the Debtors that will be assumed and assigned to the Buyer.'" (Opinion at 6.) The two other excerpts from the Opinion quoted by HE (D.I. 15 at 1-2, ¶ 1), noting the treatment of Assumed Contracts under the APA and Sale Order, are unrelated to this Court's ultimate determination, consistent with that of the Bankruptcy Court, that the PTI was property of the Debtors' estate unaffected by paragraph 44.

predated the Assignment." (*Id.*) HE takes issue with the Opinion's statement that the "[t]he Settlement Agreement was not a license," and that Paragraph 44 did not "cause ownership to revert back to HE." (Opinion at 14.) Ownership is a "red herring," HE argues, because "[t]he Enforcement Order is valid only if the Debtors transferred their rights in the PTI to the Buyer. By the plain and overriding language of Paragraph 44's second sentence, no such transfer occurred." (*Id.* at ¶ 21.)

The red herring is HE's argument that the PTI was somehow a contractual right, not an asset of the estate, and that the Debtors' transfer of any such rights to the Buyer was prevented by Paragraph 44. As set forth in the Opinion, "[t]he Patent IP [which included the PTI] was not a 'right' under the Settlement Agreement or Confidentiality Agreement; it was property that the Debtors owned outright." (D.I. 13 at 14.) The Debtors' interest in the Patent IP came from owning "the entire right, title, and interest in and to" that property,[45] "not from holding a contractual right to use the property." (*See id.*) Thus, the Opinion explains, the Agreements were not in the nature of a "license." (*See id.*) And "[b]ecause the Debtors' ownership of the Patent IP was not a contract right, it was not affected by paragraph 44." (*Id.*)

## V.    CONCLUSION

The Opinion does not misapprehend HE's arguments; it simply disagrees with them. For the foregoing reasons, the Motion for Rehearing (D.I. 15) is DENIED.

Entered this 24th day of September, 2025.

_____
THE HONORABLE JENNIFER L. HALL
UNITED STATES DISTRICT JUDGE

---

[45] *See* A-28 at Fourth Whereas Clause; A-29 ¶ 1; A70-71 (confirming the "sale, assignment transference and conveyance" of "the entire right, title, and interest in the Proprietary Technical Information.")